## THOMAS JACKSON *v.* W. T. SPIVEY and JOSEPH HARRIS.

Unless the order for the trial of issues before a jury so direct, the answer of one of the defendants in the original cause, is not to be read on their behalf upon such trial.

Where an insolvent person misapplied money which had been placed in his hands in trust for his own son, *Held,* that he might replace the same without being guilty of fraud against other creditors.

Although the verdict of a jury upon issues which had been tried by them in obedience of the order of a Court of Equity, be not binding upon that Court, it will not lightly be disturbed.

(*Thomas* v. *Kyles,* 1 Jon. Eq. 302, *Hughes* v. *Blackwell,* 6 Jon. Eq. 63, cited and approved.)

ISSUES in an Equity cause, tried before *Buxton, J.,* at Fall Term 1867 of the Superior Court of FRANKLIN.

The bill in the original cause was for the specific performance of a contract to sell certain lands; and for an injunction against an action of Ejectment, threatened by Harris, as purchaser at a sale under an execution against one Andrew Jackson. Having been set for hearing upon the pleadings and proofs, it was transferred to the Supreme Court, and, by order of that Court at June term 1867, issues were framed, and sent down for trial before a jury at Fall Term 1867 of the Superior Court, and it was "further ordered that the parties have leave to read in evidence [at such trial] depositions *de bene esse,* and to examine witnesses."

The issues were:

1. Was the receipt, which is in the following words: "Received of Thomas J. Jackson by the hands of Andrew Jackson sixty-four dollars in full payment of the balance of the purchase money for the land which I sold, and on which the said Andrew Jackson now resides, adjoining the lands of David W. Spivey, Jacob H. Cooley and others, containing forty and one-half acres, the deed to which I am to make to the said Thomas Jackson on application, this the 16th day of January 1858.

    (Signed)                 W. T. SPIVEY."
Witness,
    S. W. Bartholomew.

given in good faith for money received from Thomas Waters, and paid by Andrew Jackson to W. T. Spivey for the purchase of the land in good faith for Thomas Jackson the plaintiff.

2. Was the said land paid for by Andrew Jackson, and the receipt given by W. T. Spivey to make title to Thomas Jackson taken fraudulently, for the purpose of hindering and delaying the creditors of Andrew Jackson in the collection of their debts.

Upon the trial the defendants offered to read the answer of Spivey (who was dead); the plaintiffs objected, and the Court thereupon excluded it. The defendants excepted.

The plaintiff offered evidence tending to show that in 1852 his grand-father had placed in the hands of Andrew Jackson, funds sufficient to buy the land in question, with directions to buy it of said W. T. Spivey for the plaintiff; that Andrew Jackson accordingly bargained for the land, but did not at once pay the whole price for it, $20 being wanting because of his having misapplied a part of the funds; that afterwards, in 1858, said Andrew paid out of his own pocket to Spivey an account held by the latter against him for $65—one item in which was the $20 above, and that thereupon he took the receipt in dispute.

His Honor, upon this part of the case, instructed the jury that if the grand-father had placed funds in the hands of Andrew Jackson, as above mentioned, for the purpose of buying the land in dispute for Thomas Jackson, it would make no difference whether Andrew had applied the identical money to that purpose at once, or had first misapplied the funds to his own purposes and then replaced them with funds of his own; in either event the plaintiff was entitled to their verdict.

Verdict for the plaintiff upon both issues. Rule for a new trial. Rule discharged; judgment against the defendants for the costs of the Superior Court, and appeal.

*Davis* and *Rogers & Batchelor*, for the appellants.

1. Spivey's answer ought to have been submitted as evidence,

being *responsive* to the bill. Adams' Eq. 25, 3 Green. Ev. 3, 284. 1 Dev. Eq. 366, 2 D. & B. Eq. 263, 1 Jon. Eq. 226, 2 *Ibid* 505.

2. The charge is erroneous, as Andrew Jackson's replacing the money with his own, under the other evidence in the case, may have been in fraud of his own creditors.

3. The finding of the jury is not *conclusive* upon the Court. Adams' 376.

No counsel, *contra.*

RODMAN J. The first exception of the defendant, was because of the refusal of the Judge to permit the answer of the defendant Spivey, who was then dead, to be read in evidence for the defendants at the trial of the issues. The Judge committed no error in this. On a trial of a suit in a Court of Equity, the answer of a defendant may be read by him in evidence where it is responsive to the equity set up in the bill and by way of denial; but it is not evidence for him in that Court of an affirmative defence by the allegation of new matter. 2 Dan. Ch. P. 983. *Thomas* v. *Kyles,* 1 Jon. Eq. 302, *Hughes* v. *Blackwell,* 6 Jon. Eq. 63.

When issues are sent down to to be tried by a jury, it is not the practice to allow the answer of the defendant to be read, or even that part of it which is responsive and negative, unless it is so directed in the order for the trial. The Court may order that the answer shall be read, or that certain admissions shall be made, and so shape both the issues and the mode of trial, as to elicit the truth.

One reason for excluding the answer is that stated by the Judge, that the plaintiff has had no opportunity for cross-examination. Another is, that the answer is not anywhere evidence of affirmative matter, and the affirmant in the issues having on him the *onus probandi,* there can be no necessity for using the answer simply as a denial, and the issue is tried like any other issue of fact joined at law.

As to the second exception of the defendants, we can see no

·error in the manner in which the Judge left the issues to the jury. The main question was, whether Andrew Jackson paid for the forty acres of land by a voluntary appropriation of his own money, or in discharge of a debt to Thomas Jackson the plaintiff, which he owed by having received the money from plaintiff's grand father with directions to apply it to the purchase of this land, and having temporarily appropriated it to his own use. If he was *bona fide* a debtor to the plaintiff to the amount paid, he might prefer him, although he was his son, and if he had made the purchase with the money of his son; and taken the deed in his own name, he would have been held a trustee for his son.

It is true that the verdict of the jury is not positively binding on the Court, but it will not be lightly disturbed, and we see nothing in the evidence to impeach it.

The plaintiff is entitled to a decree for a specific performance by the heirs of the deceased defendant Spivey, of the contract of their ancestor, and to have his injunction against the defendant Harris perpetuated.

The plaintiff will recover his costs against Harris.

PER CURIAM.                    Decree accordingly.